UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JERRY J. MEEKS,

        Plaintiff,

  v.                                        Case No. 11-C-0054

DR. DALIA SULIENE, et. al.,

        Defendants.

**MEMORANDUM AND ORDER**

Plaintiff Jerry J. Meeks, who is proceeding pro se, lodged a civil rights complaint under 42 U.S.C. § 1983, alleging that his civil rights were violated. Plaintiff is currently incarcerated at Columbia Correctional Institution in Portage, Wisconsin.

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner plaintiff is required to pay the statutory filing fee of $350.00 for a federal lawsuit. If a prisoner does not have the money to pay the filing fee up front, he or she can request leave to proceed *in forma pauperis* in order to pay the fee over time. To proceed with an action *in forma pauperis*, the prisoner must complete a petition and affidavit to proceed *in forma pauperis* and return it to the court with a certified copy of the prisoner's trust account statement showing transactions for the prior six months. The court then assesses and, when funds exist, collects from the plaintiff at the time the action is filed an initial partial filing fee of twenty percent of the average monthly deposits to or the average monthly balance in the prisoner's trust account for the six-month period immediately preceding the filing of the complaint.

In this case, the plaintiff has filed a certified copy of his prison trust account statement for the six-month period immediately preceding the filing of his complaint. His assessed initial partial filing fee is $0. He also filed the required affidavit of indigence and it is clear that he lacks the funds to pay an initial partial filing fee. 28 U.S.C. § 1915(b)(4).

Upon review of the trust account statement and affidavit, I am satisfied that plaintiff is unable to pay the statutory filing fee in this case. Leave to proceed *in forma pauperis* therefore will be granted.

Next, the court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)-(2).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Denton v. Hernandez*, 504 U.S. 25, 31 (1992); *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). The court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Neitzke*, 490 U.S. at 327.

A complaint, or portion thereof, should be dismissed for failure to state a claim upon which relief may be granted if it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim or claims that would entitle him to relief. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). In reviewing a complaint under this standard, the court must accept as true the allegations of the complaint in question, *Hosp. Bldg. Co. v. Trs. of Rex Hosp.*, 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to

the plaintiff and resolve all doubts in the plaintiff's favor, *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969).

The court is obliged to give the plaintiff's pro se allegations, however inartfully pleaded, a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege: (1) that he was deprived of a right secured by the Constitution or laws of the United States, and (2) that the deprivation was visited upon him by a person acting under color of state law. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980).

Here plaintiff alleges that he was shot in 1998 and bullets remains lodged in his left leg. In 2000, after he was incarcerated, plaintiff complained of pain in his left leg where he had been shot. He underwent emergency surgery to remove the first bullet. The physician who performed the surgery told plaintiff that another bullet was still lodged in his leg which would need to be removed at a future date.

Plaintiff was examined by Dr. Suliene some three to six months later. She told plaintiff that his medical records were wrong, that he just had a lump or bruise, and that she believed plaintiff was faking pain. She sent plaintiff back to his cell without medication. Plaintiff claims he continued to complain of pain though it is not clear what if anything transpired between 2000 and 2010. It does appear that Dr. Suliene had his leg x-rayed in 2010. While he was lying on the x-ray table plaintiff overheard the x-ray technician tell Dr. Suliene that there was a bullet in plaintiff's leg that needed to be removed immediately. Plaintiff claims that Dr. Suliene sent him to several specialists and to Portage Hospital for specialized x-rays.

In July and August 2010 Dr. Gannon saw plaintiff regarding his complaints of leg pain. Dr. Gannon noted that plaintiff's leg was non-tender and had no redness in the leg area. He prescribed

3

ibuprofen for plaintiff's pain. After plaintiff asked to have the bullet removed, Dr. Gannon had the leg x-rayed again. The x-ray revealed bullet fragments in plaintiff's left leg but Dr. Gannon determined that there was no need for intervention.

Plaintiff claims he has made repeated requests for treatment between June of 2010 and November of 2010. He claims when he told Dr. Monese he wanted the bullet removed from his leg, Dr. Monese merely responded by telling plaintiff about the potential complications of such a surgery. On December 28, 2010 prison officials informed plaintiff that he will soon be having surgery. Plaintiff claims that prison officials and medical staff were deliberately indifferent to his medical needs by refusing to surgically remove the bullet that, he says, caused him great pain as well as mental anguish.

The turning of a blind eye to the legitimate medical needs of a prisoner-patient, including his complaints of pain, can constitute a violation of the Eighth Amendment. Moreover delays in treating non-life-threatening but painful conditions can constitute a failure to address a serious medical need. *Gutierrez v. Peters,* 111 F.3d 1364, 1371 (7th Cir. 1997); *See also Edwards v. Snyder*, 478 F.3d 827, 830-32 (7th Cir. 2007) (holding that a prisoner's claim against a doctor survived dismissal under 28 U.S.C. § 1915A where the prisoner was forced to wait two days for proper treatment of his severely injured finger, leading to "permanent disfigurement, loss of range of motion, and the infliction of unnecessary pain"). In light of this standard, the actions of Dr. Suliene, Dr. Monese, and Dr. Gannon may constitute a failure to address a serious medical need. Thus plaintiff will be allowed to proceed on his deliberate indifference claims against these defendants.

4

While plaintiff has stated cognizable constitutional claims under the Eighth Amendment against Drs. Suliene, Monese and Gannon at this stage, it bears noting that medical malpractice, negligence, and even gross negligence do not rise to the level of deliberate indifference. *Sain v. Wood*, 512 F.3d 886, 894-95 (7th Cir.2007). Prisoners are entitled only to adequate medical care, not to the specific treatment they prefer. *See Johnson v. Doughty,* 433 F.3d 1001, 1010 (7th Cir.2006).

Although plaintiff has alleged that he was denied a right protected by the Constitution, he does not allege the requisite personal involvement of the some of the defendants he has sued. The mere fact that the defendant is employed in a supervisory role at the institution does not suffice. The doctrine of *respondeat superior* does not apply, meaning that the supervisor will not be held accountable for the actions of those underneath him unless the supervisor's own acts are implicated. In other words, liability under § 1983 must be based on the defendant's personal involvement in the constitutional violation. *Gentry v. Duckworth,* 65 F.3d 555, 561 (7th Cir. 1995). Because the complaint alleges no personal involvement by "Columbia Correctional Institution" or by the "Wisconsin Resource Center" they will be dismissed as parties to plaintiff's suit.

On January 26, 2011 plaintiff filed a letter requesting counsel be appointed on his behalf. (Dkt. 5.) Indigent civil litigants have no constitutional or statutory right to be represented by counsel in federal court. *McKeever v. Israel*, 689 F.2d 1315 (7th Cir. 1982). Although the court has the power to request an attorney to represent an indigent civil litigant, 28 U.S.C. § 1915(e)(1), the decision is a discretionary one. *Jackson v. County of McLean*, 953 F.2d 1070, 1071 (7th Cir. 1992). There is no funding for appointed counsel in civil cases, and counsel is therefore rarely asked to represent civil litigants on a pro bono basis. Given the fact that a successful civil rights

5

plaintiff is entitled to recovery of attorney's fees, *see* 42 U.S.C. § 1988, civil rights plaintiffs are expected in most circumstances to secure their own counsel. Appointment of counsel at this stage is not proper because plaintiff has demonstrated an ability to communicate clearly, and represent himself effectively, thus far in the proceedings. In addition, it is unclear what independent steps plaintiff has taken to secure counsel.

That said, counsel may be appointed on some cases if doing so is necessary to ensure the plaintiff is not denied due process of law. If the case proceeds further and the Court believes that the assistance of counsel would be necessary to ensure the plaintiff a fair shot at enforcing his constitutional rights, the court may order the appointment of counsel on its own motion. At this point the plaintiff's motion to appoint counsel will be denied.

**THEREFORE, IT IS ORDERED** that plaintiff's request to proceed *in forma pauperis* is **GRANTED**.

**IT IS ORDERED** that the Secretary of the Wisconsin Department of Corrections or his designee shall collect from the plaintiff's prison trust account the $350.00 balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to twenty percent of the preceding month's income credited to the prisoner's trust account and forwarding payments to the clerk of the court each time the amount in the account exceeds $10.00 in accordance with 28 U.S.C. § 1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this action.

**IT IS FURTHER ORDERED** that plaintiff's claim against the Columbia Correctional Institution and the Wisconsin Resource Center are dismissed pursuant to 28

U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1) for failure to state a claim upon which relief may be granted.

Pursuant to a Memorandum of Understanding entered into between the Wisconsin Department of Justice and the U.S. District Clerk of Court for the Eastern District of Wisconsin, copies of the petition and this order have been sent via a Notice of Electronic Filing ("NEF") to State of Wisconsin respondent(s) through the Attorney General for the State of Wisconsin. The Department of Justice will inform the Court within 21 days from the date of the NEF of the names of the defendants on whose behalf the Department will not accept service of process, the reason for not accepting service for them, and the last known address of the defendant. The Department of Justice will provide the pleadings to those respondents on whose behalf they have agreed to accept service of process.

**IT IS ORDERED** that the defendants shall file a responsive pleading to the plaintiff's complaint.

**IT IS ORDERED** that plaintiff's request for appointment of counsel [Dkt. #5] is **DENIED**.

Plaintiff is hereby notified that, from now on, he is required, under Fed. R. Civ. P. 5(a), to send a copy of every paper or document filed with the court to the opposing parties or their attorney(s). Plaintiff should also retain a personal copy of each document. If plaintiff does not have access to a photocopy machine, plaintiff may send out identical handwritten or typed copies of any documents. The court may disregard any papers or documents which do not indicate that a copy has been sent to each defendant or to their attorney(s).

Plaintiff is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute.

In addition, the parties must notify the clerk of court's office of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Nothing in this order or in § 1915A precludes a defendant from moving to dismiss any claim identified in this order or potentially existing in the complaint if the defendant disagrees with my analysis or believes I have overlooked something during my screening.

Dated this __27th__ day of January, 2011.

s/ William C. Griesbach  
William C. Griesbach  
United States District Judge