UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

JERRY J. MEEKS,

        Plaintiff,

v.                                                                         Case No. 11-C-0054

DR. DALIA SULIENE, DR. GAANAN,
and DR. MONESE,

        Defendants.

---

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

---

Plaintiff Jerry J. Meeks, a prisoner serving a sentence in a Wisconsin prison, filed this action under 42 U.S.C. § 1983 alleging that his civil rights were violated as a result of the delay by prison health care staff in removing a bullet lodged in his leg as a result of a previous shooting. Defendants Drs. Dalia Suliene, Carlo Gaanan[1], and George Monese have moved for summary judgment. For the reasons discussed herein Defendants' motion will be granted as to Drs. Gaanan, and Monese. It will be denied as to Dr. Suliene.

**BACKGROUND**

Meeks' pro se complaint is not entirely clear as to the chronology of the events alleged, but in general alleges the following facts. Meeks was shot in 1998, prior to his incarceration, and several bullets remained lodged in his left leg. In 2000, while an inmate at Columbia Correctional

---

[1] Named on the docket as "Dr. Gannon."

Institution (CCI) in Portage, Meeks informed the prison medical staff that he was experiencing pain in his left leg. Meeks was then seen by Dr. Bridgewater, who recognized the problem immediately and performed emergency surgery to remove one of the bullets. Dr. Bridgewater informed Meeks that the remaining bullet (or bullets — it is unclear from the complaint) would have to be removed at a later date. Dr. Bridgewater also advised him that his chronic pain would continue until all of the bullets or fragments were removed.

Meeks alleges that approximately three to six months later, he again began experiencing severe pain in his left leg. At that time he claims he was seen by Dr. Suliene, who told him that Dr. Bridgewater no longer worked at CCI and that she would be attending to his medical needs. This is where Meeks' chronology appears doubtful. Dr. Suliene did not begin working at CCI until January 3, 2006. Thus, she could not have seen Meeks there three to six months after he was seen by Dr. Bridgewater. It seems more likely Meeks means 2008, since records show he was in fact seen by Dr. Sulieme at CCI in that year. In any event, Meeks claims he told Dr. Suliene about the bullets in his leg and showed him a lump on the front of this leg that was causing him extreme pain. He claims Dr. Suliene told him he was faking, there was no bullet in his leg, and that the lump was nothing but a bruise. She then sent him back to his cell with no pain medication.

In July and August 2010 Drs. Gaanan and Monese repeatedly saw Plaintiff regarding his complaints of leg pain. Dr. Gaanan noted Plaintiff's leg was non-tender and had no redness. He prescribed ibuprofen for the pain. After Plaintiff asked to have the bullet removed, Dr. Gaanan had the leg x-rayed again. The x-ray revealed bullet fragments in Plaintiff's left leg but Dr. Gaanan determined that there was no need for intervention. Meeks additionally alleges he told another

2

doctor (Dr. Monese) he wanted the bullet removed from his leg. According to Meeks, Dr. Monese merely responded by telling plaintiff about the potential complications of such a surgery.

Plaintiff claims he made repeated requests for treatment of the leg pain between June and November of 2010. On October 25, 2010, Meeks was seen by a registered nurse for a complaint about the bullet in his leg. He was then placed on a list to see Dr. Suliene. (DPFOF ¶ 10; Suliene Aff. ¶ 11.) Dr. Suliene saw Meeks again on October 27, 2010. She noted his left leg appeared unremarkable without any pain on palpation with some crepitus and no effusion or instability. Dr. Suliene requested x-rays of the left knee and left lower leg. She also ordered a bone scan of the left lower leg and lab work. (DPFOF ¶ 11; Suliene Aff. ¶ 12.)

The x-rays, obtained on November 2, 2010, reported "metallic density, consistent with appearance of bullet fragment, seen anterior mid diaphysis of the fibular soft tissue." Meeks alleges he continued to complain of pain over several follow-up visits to Dr. Suliene in November. Finally, on November 17, 2010, Dr. Suliene requested a consult with Dr. Thomas W. Grossman, M.D., for left lower leg foreign body removal. (DPFOF ¶ 16.)

Meeks saw Dr. Grossman for consultation on December 6, 2010. X-rays of the left lower leg showed a 1.2 cm foreign body present with soft tissue swelling around it. (*Id.* ¶ 19.) X-rays also revealed a healed proximal fibula fracture. Dr. Grossman recommended removal of the foreign body. A surgical appointment was scheduled at Waupun Memorial Hospital for January 6, 2011 and on that date Dr. Grossman removed the remaining bullet fragment from Meeks' left lower extremity.

Meeks' claim, in essence, is that Drs. Suliene, Gaanan and Monese violated his civil rights by the deliberate indifference to his repeated requests for treatment. Had they not been deliberately

3

indifferent to his serious medical needs, he claims, they would have ordered surgery earlier and he would not have suffered pain and discomfort for so long.

## ANALYSIS

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party has the initial burden of demonstrating that it is entitled to summary judgment. *Id.* at 323. Once this burden is met, the nonmoving party must designate specific facts to support or defend its case. *Id.* at 322–24.

In analyzing whether a question of fact exists, the court construes the evidence in the light most favorable to the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The mere existence of some factual dispute does not defeat a summary judgment motion, however; there must be a genuine issue of material fact for the case to survive. *Id.* at 247–48.

"Material" means that the factual dispute must be outcome-determinative under governing law. *Contreras v. City of Chicago*, 119 F.3d 1286, 1291 (7th Cir. 1997). Failure to support any essential element of a claim renders all other facts immaterial. *Celotex*, 477 U.S. at 323. A "genuine" issue of material fact requires specific and sufficient evidence that, if believed by a jury, would actually support a verdict in the nonmovant's favor. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 249. Where the record taken as a whole could not lead a rational trier of fact to find for the

nonmoving party, there is no genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**I. Exhaustion of Administrative Remedies**

I begin with Defendants' argument that Meeks failed to exhaust his administrative remedies as required by as required by 42 U.S.C. § 1997e(a). The purpose of the exhaustion requirement is to allow prison officials a swift and early opportunity to cure any constitutional violations to which they are alerted. This not only provides the possibility of immediate relief to the inmate, it often obviates the need for federal courts to become involved in prison administration. Thus, if an inmate appeals a disciplinary report citing Grounds A and B, and then files a civil lawsuit based on Ground C, he has not properly exhausted his administrative remedies because he never informed prison officials about the basis of the complaint that gave rise to his lawsuit. Exhaustion is also required even if the inmate believes an appeal will be futile. *Booth v. Churner*, 532 U.S. 731 (2001). "The sole objective of § 1997e(a) is to permit the prison's administrative process to run its course before litigation begins." *Cannon v. Washington*, 418 F.3d 714, 719 (7th Cir. 2005).

Defendants contend Meeks failed to exhaust his administrative remedies with respect to Drs. Gaanan and Monese.[2] The Inmate Complaint Review System (ICRS) within the Wisconsin prison system is the administrative remedy available to inmates with complaints about the actions of prison officials. *See* Wis. Admin. Code § DOC 310.01(2)(2). The procedure beings with an inmate filing

---

[2] Dr. Suliene does not join her two co-defendants in this affirmative defense. Dr. Suliene is employed at Columbia Correctional Institute. Only Drs. Monese and Gaanan were employed at the Wisconsin Resource Center when Plaintiff filed three offender complaints in the summer of 2010 concerning the bullet fragment lodged in his left leg.

5

an Offender Complaint with the Institution Complaint Examiner (ICE). *See* §§ DOC 310.09, 310.11. This filing must be done within fourteen calendar days of the event giving rise to the complaint. *See* § DOC 310.09(6). The ICE shall review and acknowledge each complaint in writing within five working days after the date of receipt. *See* § DOC 310.11(2). The ICE shall either reject the complaint or send a recommendation to the appropriate reviewing authority. *See* § DOC 310.11(4) and (5). If the Offender Complaint is not rejected, the ICE must make a recommendation to the reviewing authority within twenty working days from the date of acknowledgment. *See* § DOC 310.11(11). The Offender Complaint is then decided by the appropriate reviewing authority. *See* § DOC 310.12. The appropriate reviewing authority must make a decision on the recommendation within ten working days from its receipt. *See* § DOC 310.12(1). If the inmate is "dissatisfied with a reviewing authority decision" he may appeal the decision to the Corrections Complaint Examiner (CCE) "within 10 calendar days after the date of the decision." *See* § DOC 310.13(1). The CCE then makes a recommendation to the DOC Secretary, who takes final action. *See* §§ DOC 310.13(6), 310.14. The failure to complete each step in the ICRS grievance procedure properly constitutes failure to exhaust available administrative remedies. *See* § DOC 310.05 ("Before an inmate may commence a civil action . . . against any officer, employee, or agent . . . the inmate shall exhaust all administrative remedies that the department of corrections has promulgated by rule.").

While at the Wisconsin Resource Center (WRC), Plaintiff filed three offender complaints concerning the failure of doctors to remove a bullet fragment from his left leg: WRC-2010-13613, WRC-2010-13614, and WRC-2010-14590. (DPFOF ¶¶ 30–33.) Defendants Drs. Monese and Gaanan were employed at the WRC during the time periods of these offender complaints. (DPFOF

6

¶ 4.) The ICRS consolidated the three complaints and addressed the issues in its response to offender complaint WRC-2010-14590.[3] (DPFOF ¶¶ 34–35.)

WRC-2010-14590 was filed on July 9, 2010, and listed Plaintiff's complaint that he had pain caused by the failure of doctors to remove, surgically, a bullet from his leg. (DPFOF ¶ 33.) The ICE conducted an investigation and spoke with a nurse, who reviewed Plaintiff's medical file and spoke directly to Plaintiff. The ICE determined Plaintiff had been seen by medical staff but was not satisfied with the care being offered or provided. The ICE determined that the type of specific care of treatment offered is a matter of professional medical judgment. The ICE determined he had no reason to believed that the care and treatment offered was not adequate to the demonstrated need. (DPFOF ¶ 38.) On August 6, 2010, the ICE recommended dismissal of this complaint. (DPFOF ¶ 39.) The reviewing authority followed the ICE's recommendation and dismissed Plaintiff's offender complaint (WRC-2010-14590) on August 24, 2010. (DPFOF ¶ 42.)

Despite the availability of an appeals procedure, Plaintiff did *not* file an appeal of this dismissed offender complaint with the CCE. (DPFOF ¶ 28–29, 43–44.) "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies, and thus is foreclosed by § 1997(e)(a) from litigating." *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002). Here there is no record that Plaintiff even attempted to file an appeal. Because offender complaint WRC-2010-14590 represents Plaintiff's administrative remedy with respect to

---

[3] The two other relevant offender complaints, WRC-2010-13613 and WRC-2010-13614, were rejected by the ICE on August 29, 2010, with the rationale that the issue Plaintiff raised has been addressed through the inmate's prior use of the ICRS (specifically, offender complaint WRC-2010-14590). (DPFOF ¶¶ 34–35, 40–41.) In other words, Plaintiff's three related complaints concerning the bullet fragment in his left leg were consolidated and answered in the ICRS response to offender complaint WRC-2010-14590.

the federal claims against Defendants Monese and Gaanan, and he failed to complete the ICRS steps as required by Wisconsin law, Plaintiff did not exhaust his administrative remedies prior to commencing this suit. Consequently, the PLRA requires dismissal of the federal claims against Defendants Monese and Gaanan. *See* 42 U.S.C. § 1997(e)(a); *see also Perez v. Wisconsin Department of Corrections*, 182 F.3d 532, 535 ("[A] suit filed by a prisoner before administrative remedies have been exhausted must be dismissed; the district court lacks discretion to resolve the claim on the merits."). Because there are no other claims against Drs. Monese and Gaanan, these defendants are dismissed from this suit.

In his brief in opposition to Defendants' motion for summary judgment[4], Meeks attempts to refute this argument by saying that he has indeed exhausted his remedies because he filed "appeals to the warden." (ECF No. 82 at 9.) He points to Exhibit 1003 to the Affidavit of Welcome Rose submitted by Defendants. (*Id.*) He asserts this document proves he has exhausted his administrative remedies before filing Eighth Amendment deliberate indifference claims against Drs. Monese and Gaanan. He claims that because he filed WRC-2010-13613 and WRC-2010-13614, he exhausted his administrative remedies. But these filings do not substitute for the appeals process outlined by the ICRS. He further does not dispute that he failed to file an appeal of WRC-2010-14590 with the CCE. (DPFOF Reflecting Responses and Replies ¶¶ 28–29, 43–44.) His "defense" therefore does not change the fact that he failed to give the WRC administration — or Defendants Monese and Gaanan — notice of his problem or the opportunity to address and fix

---

[4] Although Meeks labeled his brief as a "Brief in Support of Motion for Summary Judgment", he never moved for summary judgment and he addresses Defendants' arguments in a fashion consistent with a response to their motion for summary judgment. (ECF No. 82.) Accordingly, his brief will be treated as a brief in opposition to their motion for summary judgment.

it. Plaintiff's failure to appeal means he did not exhaust his administrative remedies pursuant to state law. *See* Wis. Admin. Code § DOC 310.05 ("Before an inmate may commence a civil action . . . against any officer, employee, or agent . . . the inmate shall exhaust all administrative remedies that the department of corrections has promulgated by rule."). Consequently, Plaintiff did not exhaust his administrative remedies against Defendants Monese and Gaanan as required by federal law and his claims against them will be dismissed.

**II. Eighth Amendment**

Defendants have not alleged that Meeks failed to exhaust his administrative remedies as to his claim against Dr. Suliene. I therefore turn now to the merits of that claim.

The Eighth Amendment to the U.S. Constitution prohibits the infliction of cruel and unusual punishment. "Cruel and unusual punishment" has been defined to include deliberate indifference to a prisoner's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "Deliberate indifference" means that the prison officials "each knew that [the prisoner] faced a substantial risk of serious harm, and yet disregarded that risk by failing to take reasonable measures to address it." *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008). "Deliberate indifference" means something more than mere negligence, but something less than intentional conduct. *Del Raine v. Williford*, 32 F.3d 1024,1031–32 (7th Cir. 1994). A prison official that does not know about the harm or cannot do anything about it is not "deliberately indifferent" for failing to act. *Id.* at 1038. A plaintiff's medical needs must have been objectively serious; the inadequate treatment of minor medical needs simply does not rise to the level of a constitutional wrong. *See Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996).

Meeks contends that a bullet fragment lodged in his left leg caused him severe pain and that Dr. Suliene was deliberately indifferent to it. In response to Meeks' allegations against Dr. Sulieme, the defendants focus exclusively on her treatment of him after he returned to CCI from WRC on October 13, 2010. (DPFOF ¶ 3.) If that were the only time Dr. Sulieme saw Meeks, defendant's argument that she is entitled to summary judgment on Meeks' claim against her would be stronger. Meeks offers no evidence to contradict her affidavit describing the treatment she provided. Nor does he offer any evidence that calls into question her assertion that after she examined Meeks on October 27, 2010, she followed the proper course of action in ordering x-rays, a bone scan, lab work, and prescribing medication for infection and pain. Dr. Sulieme indicated that no referral for surgery was necessary at that time, and upon examining him approximately one week later, the swelling in his left leg was subsiding. (*Id*. ¶ 23.) Dr. Sulieme indicates that she followed the proper course of action in continuing with the previously ordered therapy at that time. (*Id.* ¶ 24.) Not until after her examination of Meeks on November 17, 2010 and her review of the bone scan did Dr. Suliene decide a referral to an orthopedic surgeon was medically appropriate.

But Meeks' claim against Dr. Sulieme is not limited to the events after October 2010. Meeks contends that Dr. Sulieme should have ordered treatment and provided him with pain medication starting all the way back in 2008. (ECF No. 82 at 2.) Among the numerous papers he submitted is a July 8, 2008 report of an X-ray taken of his left leg at that time. The findings are of a "healing fracture of the proximal third of the fibula" with a bullet slug in the middle third of the leg anterior to the fibula. (ECF 58) Dr. Sulieme is listed as the referring physician. Meeks alleges that he informed Dr. Sulieme at that time of his severe pain in his leg at that time, but she sent him back to his unit without even giving him pain medication. He notes he did not have surgery again

10

until 2011 which was "a long time [to be] in chronic pain." (*Id.* at 3.) Defendants' only response to these allegations is to claim that they are untimely, improper, and unsupported by the findings of fact. Prior to filing his response brief, Defendants say, Plaintiff had never alleged Dr. Suliene was deliberately indifferent to his serious medical need in any year other than 2010.

While I agree with Defendants that Plaintiff's complaint is confused, the events of 2008 are nevertheless within the scope of Plaintiff's allegations and claims. In fact, he explicitly notes (apparently in error) that he saw Dr. Suliene soon after seeing Dr. Bridgewater. Given that the bullet issue was ongoing (i.e. Meeks claims he had been making the same complaints of pain since at least 2008) it makes sense to view this as a process of treatment occurring over several years rather than individual, isolated incidents (such as a 2008 diagnosis versus a separate 2010 diagnosis). *See, e.g.*, *Gutierrez v. Peters*, 111 F.3d 1364, 1375 (7th Cir. 1997) (noting "we must examine the totality of an inmate's medical care when considering whether that care evidences deliberate indifference to his serious medical needs"). Plaintiff's claim is essentially, then, that the bullet should have been removed sooner and to ignore this over the years (as well as his ongoing complaints of pain) constitutes deliberate indifference.

The critical question is what Dr. Suliene knew of Plaintiff's medical needs and whether she was deliberately indifferent to serious medical needs. Delays in treating non-life-threatening but painful conditions can constitute a failure to address a serious medical need. *Gutierrez*, 111 F.3d at 1371; *see also Edwards v. Snyder*, 478 F.3d 827, 830–32 (7th Cir. 2007) (holding that a prisoner's claim against a doctor survived dismissal under 28 U.S.C. § 1915A where the prisoner was forced to wait two days for proper treatment of his severely injured finger, leading to "permanent disfigurement, loss of range of motion, and the infliction of unnecessary pain").

11

Admittedly, as a prisoner, Meeks is entitled only to *adequate* medical care, not to the specific treatment he prefers. *See Johnson v. Doughty*, 433 F.3d 1001, 1010 (7th Cir. 2006) (emphasis added). Still, a plaintiff's receipt of some medical care does not automatically defeat a claim of deliberate indifference if a fact finder could infer the treatment was "so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate" a medical condition. *Snipes*, 95 F.3d at 592 (citation omitted).

Given Meeks' status as a *pro se* litigant, I conclude he has sufficiently alleged the denial of treatment to raise an issue of fact as to whether it rises to a constitutional violation. Looking at the facts in the light most favorable to the non-moving party, Plaintiff complained about his pain for three years before the bullet was finally removed from his leg, if not longer. He further allegedly had to convince Dr. Suliene of the bullet's presence, as she initially accused him of "faking" it. At least on the record as it now stands, a reasonable fact finder could conclude, from these facts, that Dr. Suliene was deliberately indifferent to Plaintiff's medical needs. Even if it was reasonable not to remove a bullet initially, it does not seem reasonable to leave it there if it continues to cause substantial pain as Meeks alleges here. Defendants also failed to address Meeks allegation that he was told by Dr. Bridgewater back in 2000 that he would continue to have difficulties unless all of the fragments were removed. Too many questions unaddressed by either party remain for summary judgment to be granted. Defendants' motion for summary judgment as to Meeks' claim against Dr. Sulieme will therefore be denied.

Finally, while I have denied Meeks's multiple requests for counsel thus far, I am convinced now that the case has survived summary judgment, that the case merits the recruitment of counsel. The record suggests that Meeks has a history of mental illness (he has been diagnosed as having a

Schizo-affective disorder, bipolar type), and the remaining portion of the case involves difficult factual and medical issues that Meeks lacks the minimal competency to present even as a lay person. *See Pruitt v. Mote*, 503 F.3d 647, 656 (7th Cir.2007) (en banc). In this regard, it should be noted that a private attorney did consider representing Meeks in this matter when the Court had earlier considered his request for court-appointed counsel. The attorney informed Meeks in a letter (which Meeks then included in his court filings) that in his view, after consulting with medical personnel, including the doctor who removed the bullet, finding an expert to support his claim would be difficult. (ECF 52-3.) If this is true, it may be that the defendants can avoid trial on a renewed motion for summary judgment. But as the case now stands, it will continue.

## CONCLUSION

I therefore conclude that Plaintiff failed to exhaust his administrative remedies with respect to Drs. Monese and Gaanan. However, there still remain questions of material fact with respect to Dr. Suliene. For the reasons given above, the Defendants' motion for summary judgment is GRANTED in part and DENIED in part. The concerns articulated in Meeks' letter (ECF No. 86) are dismissed as moot. The Clerk is directed to place this matter on the Court's calendar for a status conference after thirty days by which time counsel can hopefully be recruited to represent Meeks.

Dated this __27th__ day of March, 2012.

s/ William C. Griesbach<br>
William C. Griesbach<br>
United States District Judge